UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

       v.

Shelby Delane Ashford, Jr.,

       Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 17-298(4) ADM/KMM

---

Benjamin Bejar, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Adine S. Momoh, Esq., Stinson LLP, Minneapolis, MN, on behalf of Defendant.

---

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Shelby Delane Ashford, Jr.'s ("Ashford") Motion to Modify Sentence of Imprisonment [Docket No. 426]. Ashford requests a compassionate release sentence reduction under 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND

On February 26, 2018, Ashford entered a plea of guilty to conspiring with other felons to possess firearms. Plea Agreement [Docket No. 184]. Ashford admitted in the Plea Agreement that during the course of the conspiracy, which ran from at least January 2014 until December 2017, he was an active member of the "HAM Crazy" street gang. Plea Agreement ¶ 2. During the conspiracy, the HAM Crazy gang participated in a gang war with rival gangs that resulted in several gang members being shot and killed. Id.

In January 2014, Ashford was driving in a car with three other gang members when

police stopped the car for a traffic violation.  Id.  During the stop, the police received a report that shots had recently been fired in the area.  Id.  The police searched the car and found two firearms, including a pistol with live rounds of ammunition and four spent casings.  Id.  Also in 2014, Ashford participated in rap videos where he brandished a firearm while rapping threatening lyrics.  Id.  In April 2017, Ashford was again with other HAM Crazy members in a vehicle that was stopped by police who found two firearms in the vehicle.  Id.  In December 2017, police attempted to arrest Ashford on a federal warrant after he had been indicted.  Presentence Investigation Report [Docket No. 277] ("PSR") ¶ 37.  Ashford fled on foot, and a stolen semiautomatic firearm and loaded magazine were subsequently found in the fresh snow along Ashford's flight path.  Id.

On July 25, 2018, Ashford was sentenced to a prison term of 58 months.  Sentencing J. [Docket No. 371] at 2.  Ashford is currently incarcerated at the Federal Correctional Institute in El Reno, Oklahoma ("FCI El Reno"), and has served slightly more than 50% of his sentence.  His projected release date is September 21, 2022.  See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Dec. 2, 2020).

While in custody, Ashford has availed himself of educational programs and work opportunities.  He participates in the drug treatment program, has completed several educational courses, is currently enrolled in VTEC Plumbing, and has maintained a job as a line server in the prison kitchen.  Def.'s Ex. [Docket No. 429, Attach. 3] at SA036–37, SA039.  He incurred one disciplinary violation in March 2020 for allowing another inmate to use his phone without permission.  Def.'s Ex. [Docket No. 429, Attach 4] at SA040.

Ashford now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Ashford, age 26, argues that he suffers from severe asthma, sleep apnea, and obesity, and that

2

these conditions make him particularly vulnerable to severe illness or death if he were to contract COVID-19.  He further states that he has Post Traumatic Stress Disorder ("PTSD"), and that his condition has worsened due to the stress caused by COVID-19 and his imprisonment.  Ashford argues the living conditions in prison prevent him from mitigating the risk of contracting COVID-19 because the close confines of the prison environment make social distancing nearly impossible.  FCI El Reno recently experienced a COVID-19 outbreak, and reports that although 298 inmates and 20 staff members have recovered from the virus, 25 active cases remain among prisoners and staff members, and one inmate has died.  See Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Dec. 2, 2020); Def.'s Letter [Docket No. 434].  Ashford contends the combination of these circumstances constitute extraordinary and compelling reasons for his release.

Ashford's reentry plan, approved by the United States Probation Office, includes residing with his stepmother.  See Compass. Release Investig. [Docket No. 420].  The Probation Office notes, however, that Ashford resided with his stepmother while he was on pretrial release and had "repeated violations."  Id. at 2.

The Government opposes Ashford's Motion, arguing that a sentence reduction is not warranted because Ashford's health conditions do not constitute extraordinary and compelling reasons for his release, that Ashford poses a danger to the community, and that the § 3553(a) sentencing factors weigh against his release.

### III.  DISCUSSION

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A).  Under this provision, a court may reduce a term of

3

imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of th[e] policy statement." U.S.S.G. § 1B1.13 comment n.3. The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A). U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The parties agree that Ashford has satisfied the exhaustion requirement because he filed a request for release with the Warden of his facility and was denied. Def.'s Addendum [Docket No. 428] at SA030; Gov't Resp. Opp'n [Docket No. 432] at 17 n.10. His motion is therefore ripe for review.

When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the

4

disease" and "a particularized risk of contracting the disease at his prison facility." United States v. Miland, No. 16–0159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020) (quoting United States v. Feiling, No. 3:19–112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)); accord United States v. Ramirez, No. 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020); United States v. Shamilov, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Ashford argues he is particularly susceptible to COVID-19 because he is obese and also has asthma, sleep apnea, and PTSD. Ashford's body mass index ("BMI") measurement was between 32 and 34 in 2019, which meets the CDC's definition of obesity (BMI over 30). See CDC, Coronavirus Disease 2019, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 2, 2020). The CDC's guidelines state that people with a BMI over 30 are at an increased risk of severe illness from COVID-19. See id. Nevertheless, Ashford's medical records shows he is physically active and plays sports regularly. Def.'s Ex. [Docket No. 429] at SA006. Additionally, at age 26, Ashford is considerably younger than the category of adults most vulnerable to COVID-19.

With regard to Ashford's asthma, the CDC states only that people with moderate to severe asthma "might" be at an increased risk for severe illness from COVID-19. See CDC, Coronavirus Disease 2019, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 2, 2020). Ashford's

sleep apnea and PTSD are not listed among the conditions recognized by the CDC as risk factors for COVID-19.  Id.  Viewing Ashford's age, health conditions, and physical activity, the Court finds that Ashford has not demonstrated extraordinary and compelling reasons warranting a sentence reduction.

Even if Ashford could show extraordinary and compelling reasons for his release, his motion would still be denied because the Court cannot conclude that Ashford "is not a danger to the safety of any other person or to the community."  See U.S.S.G. § 1B1.13(2).  Ashford has a violent criminal history, including three felony convictions in 2015 for attempted simple robbery, crime committed for the benefit of a gang, aiding and abetting possession of a firearm with an altered serial number.  Plea Agreement ¶ 2.  He also has a felony conviction in 2016 for theft of property.  Id.  Ashford committed the current crime while on probation from a felony robbery conviction.  PSR ¶¶ 90, 94.  During the 2 ½ years he has been in prison, Ashford has made commendable efforts toward rehabilitation.  However, at this time the Court is not persuaded that Ashford no longer presents a danger to the community.

The sentencing factors in § 3553(a) also weigh against Ashford's release.  These factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  When sentencing Ashford, the Court determined that a 58-month term of imprisonment was necessary to carry out these sentencing goals.  Statement Reasons [Docket No. 372] at 4.  Releasing Ashford after he has served only about half of his sentence would undermine these sentencing considerations.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Shelby Delane Ashford, Jr.'s Motion to Modify Sentence of Imprisonment [Docket No. 426] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  December 2, 2020